IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **Quinda Beeson,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-20-327-SLP |
| ) | |
| **Safeco Insurance Company of America,** ) | |
| ) | |
| **Defendant.** ) | |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW Plaintiff Quinda Beeson ("Beeson") and pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, Plaintiff moves for partial summary judgment determining as a matter of law: (A) the law applicable to the determination of coverage and assessment of damages under Plaintiff's contract of insurance with Defendant Safeco Insurance Company of America ("Safeco") is that of the State of Colorado; (B) Colorado law prohibits the practice of reducing Underinsured Motorist ("UIM") benefits payable to an insured by amounts paid to the same insured by other sources, including health insurance providers; (C) Safeco failed to comply with Colorado law by reducing UIM benefits payable to Beeson by amounts paid by her health insurer; (D) Safeco unreasonably underpaid or "low-balled" Beeson's UIM claim; and (E) the affirmative defense of "Legitimate Dispute" is unavailable to Safeco due to its deficient investigation of Beeson's claim.

I.   **Introduction.**

Plaintiff Quinda Beeson moved from Colorado to Oklahoma City in April 2017. On May 12, 2017, she was rear-ended while traveling on the interstate in Oklahoma City. The injury resulted in a number of significant injuries to Beeson, including a torn rotator cuff and multiple spinal disc injuries. At the time of the crash, Beeson was insured by a Colorado policy of insurance ("the policy") issued to her by Defendant Safeco Insurance Company of America ("Safeco"). The Policy was issued to Beeson while she was a resident of Colorado. The policy afforded Beeson Uninsured ("UM") / Underinsured Motorist ("UIM") Coverage in the amounts of $100,000 per person and $300,000 per occurrence.

Beeson provided timely notice of the crash to Safeco and retained the services of attorney Thomas Ventura to help her recover damages associated with the injuries she suffered. After Beeson finished her medical care for crash-related injuries, Ventura submitted all her related medical bills and records to Safeco for evaluation under her UIM coverage. At Safeco's request, Ventura submitted various medical records for the five (5) years preceding the crash and submitted them to Safeco.

After receiving the information submitted by Ventura, Safeco applied Oklahoma, utilizing 12 O.S. 3009.1 for the purposes of determining the reasonable value of medical expenses benefits available to her claim. Such a practice is prohibited by Colorado law. The result was a significant undervaluation of UIM benefits due to Beeson of at least $34,000.

II.   **Statement of Undisputed Material Facts.**

   A.   **The Duty of Good Faith and Fair Dealing.**

1.      An insurance company handling Oklahoma UIM claims is obligated to abide by the duty of good faith and fair dealing. *See Christian v. Home Assur. Co.,* 577 P.2d 899 (Okla. 1977).

2.      Of the many duties an insurance company owes to a UIM claimant are the following:

- An insurance company must conduct a reasonably thorough investigation of each claim, Ex. 1 - Welch Report, p. 14 - 23; Ex. 2 - Meyer Deposition, p. 34 - 35;

- An insurance company must properly document its claim file to reflect in detail how the claim was handled, Ex. 1 - Welch Report, p. 23 - 25; Ex. 2 - Meyer Deposition, p. 37 - 38;

- An insurance company must communicate with its insured in a clear and timely manner, Ex. 1 - Welch Report, p. 25 - 26;

- An insurance company must know and understand the law applicable to each claim and must train its claims handling employees on how to comply with the same, Ex. 1 - Welch Report, p. 26, 64 - 66; Ex. 2 - Meyer Deposition, p. 34 - 35;

- An insurance company must fairly evaluate all facts gathered during an investigation and may not prioritize its own financial health over those of its insured; Ex. 1 - Welch Report, p. 56 - 64; Ex. 2 - Meyer Deposition, p. 37;

- An UIM insurer may not negotiate with its insured in the same manner as it would a third-party claimant and may not offer its insured a benefit payment in an amount less than it has evaluated, Ex. 1 - Welch Report, p. 62 - 64;

- A UIM insurer must investigate, evaluate, and pay UIM claims promptly, Ex. 1 - Welch Report, p. 62 - 64; Ex. 2 - Meyer Deposition, p. 37, 50.

   **B.     The Facts of the Loss.**

3.      Beeson was involved in a vehicle collision in Oklahoma City, Oklahoma on May 12, 2017 when she was rear-ended ("the crash") by Marcus Salgado ("tortfeasor"). Beeson

was not at-fault for the collision. Ex. 3 - Oklahoma Traffic Collision Report; Ex. 4 - Claim File[1], p. 139 - 144.

4.      At the time of the crash, Beeson was insured by Safeco insurance policy no. Z4806041 ("the Policy") which afforded her UM and UIM coverage with a policy limit of $100,000 per person and $300,000 per occurrence. Ex. 5 - The Policy. The Policy is titled "Colorado Essential Personal Auto Policy" and was issued Beeson while a resident of the State of Colorado. Ex. 5 - Policy, pp. 16, 28.

5.      As a result of the collision, Beeson suffered significant injuries, including a full thickness supraspinatus tear requiring arthroscopic surgery, a 3mm annular disc bulge at C5-6, a 2 mm annular disc bulge at C6-7, a 2.5 mm parasagittal disc bulge at T5-6, and a mile annular disc bulge at T7-8. Ex. 4 - Claim File, p. 141, 978, 1007, 1099-1100, 1062-1073, 1109-1114, and 1123-1124.

6.      Beeson provided prompt notice of the claim to Safeco. Ex. 2 - Depo of Meyer, p. 58.

7.      Beeson received medical care for her crash-related injuries and, on February 23, 2018, submitted all of her crash-related medical bills and records to Safeco for evaluation under her UIM coverage after her treatment concluded. During the course of her treatment,

---

[1] The document referred to herein as Safeco's "Claim File" was produced by Safeco in this action as a complete copy of its claim file for Beeson's UIM claim. Ex. 4 contains only those pages related to the instant motion.

Beeson incurred reasonable medical expenses in the amount of $63,962.13. Ex. 4 - Claim File, p. 980 - 1006, 936 - 940[2].

8. On May 29, 2018, Safeco requested Beeson gather an additional 5 years of medical records predating the crash on its behalf. Ex. 4 - Claim File, p. 890. Ventura complied with Safeco's request on June 22, 2018. Ex. 4 - Claim File, p. 661[3].

9. Safeco refused to evaluate Beeson's claim pending confirmation of the tortfeasor's liability insurance limit. Ex. 4 - Claim File, p. 451. As of June 2, 2018, neither Safeco, nor Ventura had learned of this information. Ex. 4 - Claim File, p. 891, 449 -451.

10. On August 1, 2018, Ventura notified Safeco that the tortfeasor's liability limit was $50,000.00 and that the same had been offered to Beeson. Ex. 4 - Claim File, p. 439.

11. On August 13, 2018, Safeco waived its subrogation interest to the tortfeasor's liability policy, allowing Beeson to accept the same. Ex. 4 - Claim File, p. 349.

12. On August 22, 2018, Beeson's claim was assigned to Safeco employee Barbara Meyer, who notified Ventura that Safeco would not evaluate the same until he had provided a "full breakdown of Optum payments issued on behalf of Quinda Beeson." Ex. 4 - Claim File, p. 217. At this time, Safeco had reserved $100,000 for the payment of Beeson's claim. Ex. 4 - Claim File, p. 344. Safeco reserves insurance claim payments based upon the most

---

[2] For the Court's sake, the hundreds of pages of medical records submitted by Ventura have not been included as exhibits to this Motion.
[3] Again, Beeson has not included the hundreds of pages of medical records submitted as they do not bear on the substance of the instant motion.

probable claim outcome considering all relevant factors.  Ex. 6 - Claim Handling Guidelines, p. 1808 [1806 - 1808].

13. On September 4, 2018, Ventura provided Safeco his notes as to payments made on Beeson's medical bills indicating the reasonable value of Beeson's collision-related medical care was valued at $63,393.13 and that Beeson had an outstanding medical lien in the amount of $137.20, made out-of-pocket payments in the amount of $60.79, and had outstanding balances in the amount of $3,155.29 not subject to medical liens.  Ex. 4 - Claim File, p. 160-163.  Safeco later received notice that Optum intended to reduce its claimed subrogation interest to $22,500.00 based on Beeson's $50,000 settlement with the tortfeasor and the Safeco's unconditional UIM tender of $25,000.00.  Ex. 4 - Claim File, p. 130. It is this $22,500.00 amount that Safeco claims it utilized as the amount of UIM benefits to which Beeson was entitled to under her insurance policy for the reasonable value of her collision-related medical expenses.  Ex. 2 - Deposition of Meyer, p. 181 - 185, 190-192.

14. Safeco had been notified of Optum's claimed subrogation interest as early as July 18, 2017 and maintained communications with Optum directly thereafter.  Ex. 4 - Claim File, p. 1486-1488, 1475 - 1476, 1461 - 1462, 340, 185 - 190, 155 - 156.

15. Safeco notified Ventura that it intended to evaluate Beeson's claim using 12 O.S. 3009.1, Oklahoma's paid v. incurred statute.  In response, Ventura informed Safeco that doing so was inappropriate.  Ex. 4 - Claim File, p. 120, 118.

16. Safeco utilized 12 O.S. 3009.1 in determining the amount of UM benefits payable to Beeson for the reasonable value of her collision-related medical expenses, allowing benefits only in the amounts paid by Beeson's health insurer. Ex. 4 - Claim File, p. 139 - 144; Ex. 2 - Depo of Meyer, p. 177 - 178.

17. Safeco's evaluation of UIM benefits due and owing to Beeson required a benefit payment within the range of $26,754.13 to $38,754.13. Ex. 4 - Claim File, p. 139 - 144. Safeco's evaluation was made with the knowledge that Beeson had unpaid medical liens and other balances not subject to liens. Ex. 4 - Claim File, p. 164, 160 - 163.

18. Safeco made a UIM benefit offer to Beeson in the amount of $25,000.00, $1,754.13 less than the low end of its evaluative range. Ex. 4 - Claim File p, 135. Beeson accepted Safeco's $25,000.00 UIM offer as an unconditional tender of UIM benefits due to her as she continued to take issue with Safeco's use of 3009.1. Ex. 4 - Claim File, p. 118 - 120. This amount was paid to her on or about October 24, 2018. Ex. 4 - Claim File, p. 126 - 129.

19. Nearly a year later, Ventura wrote to Safeco again urging re-evaluation of Beeson's claim without the use of 3009.1. Ex. 4 - Claim File, p. 90 - 91. Safeco refused claiming it had appropriately utilized 3009.1, that all medical providers bills had been satisfied, and that it had created a "fair evaluation of [Beeson's] claim. Ex. 4 - Claim File, p. 87. This suit followed.

20. Safeco handled Beeson's claim with what it believed to be compliance with Oklahoma law. Ex. 2 - Depo of Meyer, p. 39 - 40. The claim file is devoid of any reference to

legal research conducted on whether the laws of Colorado or Oklahoma would apply to Beeson's claim.

### III.     Argument and Authority.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). "Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Id.* at 327 (internal quotation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-86 (1986) (internal citations and quotations omitted). In essence, the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

### A.     Colorado law governs the interpretation of Plaintiff's insurance policy.

Colorado Revised Statute Sec. 10-4-609(a) requires that any "automobile liability or motor vehicle liability policy… delivered or issued for delivery in this state" contain uninsured / underinsured motorist coverage. The Colorado Supreme Court has further noted that "[t]he statute applies only to policies that are delivered or issued in Colorado." *Apodaca v. Allstate Ins. Co.*, 255 P.3d 1099, 1105 (Colo. 2011).

8

Beeson's policy was issued to her while she was a resident of Colorado and insured vehicles primarily garaged in Colorado at that time. Although Beeson later relocated to Oklahoma and suffered injuries resulting from a collision that occurred here, the benefits to which she is entitled under the terms of her insurance policy are clearly governed by Colorado law.[4] Accordingly, Plaintiff respectfully requests the Court enter an Order determining that Colorado law applies to the interpretation of the insurance contract issued by Safeco to Beeson and the benefits Beeson is entitled to receive under the terms of the same.

> **B.  Colorado Law prohibits the diminution of UIM benefits based on health insurance payments made on the insured's behalf.**

Colorado's UM statute is designed to provide "the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." CRS Sec. 10-4-609(1)(a). The statute further requires that UM coverage "shall not be reduced by a setoff from any other coverage, including, but not limited to, legal liability insurance, medical payments coverage, health insurance, or other uninsured or underinsured motor vehicle insurance." CRS Sec. 10-4-609(1)(c), *see also Calderon v. American Family Mut. Ins. Co.*, 383 P.3d 676, 679 (Colo. 2016).

---

[4] The application of Colorado law to the interpretation of Beeson's Policy does not require the Court to likewise apply Colorado tort law to the instant action. Such a determination is governed by the law of the jurisdiction with the most significant relationship to the alleged tort and the parties based upon (1) the place where the injury occurred; the place where the injury-inducing conduct occurred; the domicile of the parties; and the place where the parties relationship occurred. *Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974). Given that Beeson's loss occurred in Oklahoma, she and her attorney interacted extensively with Safeco from Oklahoma, and that Safeco applied Oklahoma law to the interpretation of Beeson's insurance contract, it is clear that Oklahoma law applies to the instant tort claim. However, Beeson isn't seeking an Order from the Court finding the same.

Accordingly, Plaintiff seeks an Order from the Court finding that Colorado UIM law prohibits the reduction of UIM benefits paid to an insured based upon payments made by said insured's health insurance provider.

### C.  Safeco failed to investigate the law applicable to the claim.

There is no dispute that an insurance company is obligated to thoroughly investigate claims made by first-party insureds and to apply the law applicable to a claim for benefits made by said insured. Further, it is undisputed that Safeco's claim file is devoid of any inquiry into whether the law of Colorado applied to Beeson's claim for UIM benefits as it believed Oklahoma law to be applicable. It did so with the knowledge that Beeson's policy was issued to her while she was a Colorado resident and was intended to insure vehicles principally garaged in Colorado. Ex. 5 - Policy; Ex. 2 - Depo of Meyer, p. 41 - 45. In fact, the adjuster responsible for handling Beeson's claim testified that she didn't "recall this being a coverage issue." Ex. 2 - Depo of Meyer, p. 41.

Plaintiff seeks an Order finding that Safeco failed to investigate the appropriate law applicable to the interpretation of Beeson's insurance and improperly applied Oklahoma law to the same.

### D.  Safeco unreasonably underpaid or "low-balled" Plaintiff's UIM claim.

Beeson also seeks an Order from the Court finding that Safeco unreasonably underpaid or "low-balled" Beeson's UIM claim. Beeson is entitled to such an Order regardless of whether Colorado or Oklahoma law applies to her claim. Provided the Court enters an Order finding Colorado law applies to the interpretation of Beeson's claim, Safeco unreasonably underpaid benefits to Beeson in an amount representing the difference

10

between Optum's claimed subrogation amount ($22,500.00) and the amounts billed for Beeson's collision-related medical care ($63,393.13). Provided Colorado law applies to the interpretation of Beeson's insurance contract, Beeson was deprived of UIM benefits due and owing to her in the amount of $40,893.13.

Presuming the Court does not find Colorado law applies to the interpretation of Beeson's insurance policy, Beeson is still entitled to an Order finding Safeco unreasonably under paid her claim. As noted by Meyer, Safeco evaluated the UIM benefits payable to Beeson in the amount of *at least* $26,754.13. Safeco's first and only offer of payment to Beeson was made in the amount of $25,000.00. In addition, Safeco failed to provide any value to Beeson's claim for amounts she paid to her medical providers directly, outstanding medical liens, and balances still owed for medical treatment. In fact, the evidence before the Court is that Safeco failed to even investigate these matters.

Although the amount may seem insignificant, the act of "low-balling" an insured is not. Under Oklahoma law, an insurer is prohibited from "offering less than what its own investigation reveals to be the claim's value." *See Newport v. USAA*, 11 P.3d 190, 196-97 (Okla. 2000). Such conduct subjects an insurer to an award of damages for the violation of the duty of good faith and fair dealing. *Id.*

Regardless of which state's law applies to the interpretation of Beeson's Colorado insurance policy, Safeco failed to attribute the proper value to the benefits she was entitled to receive. Beeson respectfully seeks an Order finding Safeco underpaid her for UIM benefits due and owing to her.

### E. Safeco cannot claim a "Legitimate Dispute" exists because it did not conduct a legitimate investigation.

Safeco has alleged in its *Answer* of Defendant Safeco Insurance Company of America [Doc. 9] the affirmative defense that the parties "have a legitimate dispute as to coverage and / or as to the amount of Plaintiff's claim." *See* Doc. 9, p. 10. It is true that insurance companies have "the right to resist payment and litigate any claim to which the insurance company has a reasonable defense," *Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109, and that no bad faith claim will lie where there is a legitimate dispute as to coverage. *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 762 (Okla. 1984). However, to avail itself of the legitimate dispute defense, an insurer *must* conduct an appropriate factual investigation when determining whether coverage should be afforded. *Capstick v. Allstate Ins. Co.*, 998 F.2d 810, 815 (10th Cir. 1993). Moreover, even if an insurer makes a showing of legitimate dispute, if an insured presents sufficient evidence tending to show unreasonable conduct, or "evidence the insurer did not actually rely on that legitimate dispute" he or she may still recover damages for the violation of good faith and fair dealing. *Bannister v. State Farm Mutual Automobile Ins. Co.*, 692 F.3d 1117, 1126-27 (10th Cir. 2012), (*quoting Vining v. Enterprise Financial Group, Inc.* 148 F.3d 1206, 1214 (10th Cir. 1998)). Further, a plaintiff may still recover in the face of a legitimate dispute if the insurer "has constructed a sham defense to the claim or has intentionally disregarded undisputed facts concerning the insured's claim." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1442 (10th Cir. 1993); *see also Bannister v. State Farm Mutual Automobile Ins. Co.*, 692 F.3d 1117,1128 (10th Cir. 2012). As such, a legitimate dispute does not serve as an

12

"impenetrable shield" against claims of bad faith. *Timberlake Construction Co. v. U.S. Fidelity and Guaranty Co.*, 71 F.3d 335, 343 (10th Cir. 1995). Ultimately, an insurer may only claim a legitimate dispute if it conducted a legitimate investigation of the claim.

Here, Safeco cannot credibly claim it conducted a legitimate investigation of Beeson's claim. First, as noted above, in spite of being obligated to do so, Safeco conducted no investigation of whether Colorado law was applicable to the interpretation of Beeson's Policy. Instead, Safeco applied the law of Oklahoma to the claim. It did so in hopes of exploiting what many insurers claim is a gray area in Oklahoma UIM law, i.e. whether 12 O.S. 3009.1 applies to first party Oklahoma UM / UIM claims.[5] Additionally, Safeco failed to properly review the documents provided by Beeson's attorney, Thomas Ventura. As a result, Safeco failed to attribute value to Beeson's claim for the amounts Beeson paid out of pocket for her medical expenses, the outstanding medical lien, or the unpaid medical balances unsecured by medical liens. Safeco's numerous investigative failures render the affirmative defense of "legitimate dispute" unavailable to it and Beeson requests the Court enter an Order to that effect.

---

[5] Beeson unequivocally contends that Sec. 3009.1 *does not* apply to Oklahoma UM claims for myriad reasons. These reasons are not germane to the instant motion and will not be explained in detail herein. However, Beeson anticipates Safeco will file a competing *Motion for Summary Judgment* based on its interpretation of Sec. 3009.1 and she will fully address the issue in her response, provided she is correct.

13

                                        Respectfully submitted,

                                        /s/*Jacob L. Rowe*

                                        Jacob L. Rowe, OBA #21797
                                        Madison Botizan, OBA No. 34615
                                        FULMER SILL PLLC
                                        1101 N. Broadway Ext., Suite 102
                                        Oklahoma City, OK  73103
                                        Phone:   (405) 510-0077
                                        Fax:   (800) 978-1345
                                        Email: jrowe@fulmersill.com
                                                   mbotizan@fulmersill.com
                                        **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

      I hereby certify that on this 3rd day of January, 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

    William W. O'Connor
    Margo E. Shipley
    320 S. Boston Ave., Suite 200
    Tulsa, OK  74103
    boconnor@hallestill.com
    mshipley@hallestill.com

                                        /s/Jacob L. Rowe