## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **QUINDA BEESON,** | |
| **Plaintiff,** | |
| **v.** | **Case No. CIV-20-327-SLP** |
| **SAFECO INSURANCE COMPANY OF AMERICA,** | |
| **Defendant.** | |

## DEFENDANT SAFECO INSURANCE
## <u>COMPANY OF AMERICA'S TRIAL BRIEF</u>

Respectfully submitted,

**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

William W. O'Connor, OBA No. 13200
Margo E. Shipley, OBA No. 32118
320 South Boston Avenue, Suite 200
Tulsa, OK  74103-3706
Telephone: (918) 594-0400
Facsimile: (918) 594-0505
boconnor@hallestill.com
mshipley@hallestill.com

**ATTORNEYS FOR DEFENDANT SAFECO INSURANCE COMPANY OF AMERICA**

# <u>TABLE OF CONTENTS</u>

**Page**

NATURE OF THE CASE AND BASIC FACTS ............................................................ 1

SUMMARY OF THE LEGAL BASES FOR SAFECO'S DEFENSES TO
PLAINTIFF'S CLAIMS .............................................................................................. 3

I.     Judgment is Appropriate on Plaintiff's Claim for Breach of the Duty of Good
Faith and Fair Dealing ...................................................................................... 3

        A.     Safeco's Handling of Plaintiff's UIM Claim Was Reasonable .................... 5

               i.     Safeco's Investigation, Evaluation, and Payment Were
Reasonable ........................................................................................ 5

               ii.     Safeco's Reliance Upon Oklahoma Law Was Reasonable ............... 7

               iii.    Safeco's Reliance Upon Oklahoma's "Paid Versus Incurred"
Statute, OKLA. STAT. tit. 12, § 3009.1, Was Reasonable ................. 10

        B.     Plaintiff and Safeco Have a Legitimate Dispute Regarding the
Amount of Her UIM Claim ........................................................................ 13

        C.     Safeco's Conduct was not the Direct Cause of Plaintiff's Injury .............. 16

II.    Judgment in Favor of Safeco on the Issue of Punitive Damages is Proper ........... 17

ANTICIPATED EVIDENTIARY ISSUES ................................................................ 18

AUTHORITIES IN SUPPORT OF OPPOSITION TO A RULE 50 MOTION .............. 18

UNUSUAL ISSUES THAT MIGHT ARISE AT TRIAL ............................................. 18

CONCLUSION .......................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Andres v. Okla. Farm Bureau Mut. Ins. Co.,*
   227 P.3d 1102 (Okla. Civ. App. 2009) .................................................................. 13

*Badillo v. Mid Century Ins. Co.,*
   121 P.3d 1080 (Okla. 2005) ............................................................................... 4, 5

*Ball v. Willshire Ins. Co.,*
   221 P.3d 717 (Okla. 2009) ..................................................................................... 4

*Beers v. Hillory,*
   241 P.3d 285 (Okla. Civ. App. 2010) ..................................................................... 5

*Bituminous Cas. Corp. v. Pollard,*
   508 Fed. Appx. 780 (10th Cir. 2013) ..................................................................... 4

*Bohannan v. Allstate Ins. Co.,*
   1991 OK 64, 820 P.2d 787 ................................................................................. 7, 8

*Butterfly-Biles v. State Farm Life Ins. Co.,*
   Case No. 09-CV-0086-CVE-PJC, 2010 WL 346839
   (N.D. Okla. Jan. 21, 2010) ..................................................................................... 4

*Buzzard v. Farmers Ins. Co.,*
   1991 OK 127, 824 P.2d 1105 ................................................................................. 5

*Christian v. American Home Assurance Co.,*
   577 P.2d 899 (Okla. 1977) ..................................................................................... 4

*Duensing v. State Farm Mut. Auto Ins. Co.,*
   2006 OK CIV APP 15, 131 P.3d 127 .................................................................... 13

*Dunbar v. State Farm Mut. Auto. Ins. Co.,*
   Case No. 10-CV-330-GKF-TLW, 2011 WL 5878383
   (N.D. Okla. Nov. 23, 2011) ........................................................................... 4, 5, 13

*Gillham v. Lake Country Raceway,*
   2001 OK 41, 24 P.3d 858 ..................................................................................... 17

*Gov't Emps. Ins. Co. v. Quine,*
   2011 OK 88, 264 P.3d 1245 ..................................................................... 14, 15, 16

*Haltom v. Great Northwest Ins. Co.*,
    460 Fed. Appx. 751 (10th Cir. 2012) ................................................................ 4, 13

*Hambelton v. Canal Ins. Co.*,
    405 Fed. Appx. 335 (10th Cir. 2010) ........................................................ 8

*Lee v. Bueno*,
    2016 OK 97, 318 P.3d 736 ................................................................ 11, 13

*Manis v. Hartford Ins. Co.*,
    1984 OK 25, 681 P.2d 760 ................................................................ 5, 9

*Martin v. Gray*,
    2016 OK 114, 385 P.3d 64 ................................................................ 8

*McCorkle v. Great Atlantic Ins. Co.*,
    1981 OK 128, 637 P.2d 583 ................................................................ 4

*McLaughlin v. National Benefit Life Ins. Co.*,
    772 P.2d 383 (Okla. 1988) ................................................................ 17, 18

*National Mut. Cas. Co. v. Britt*,
    218 P.2d 1039 (Okla. 1950) ................................................................ 5

*Oulds v. Principal Mut. Life Ins. Co.*,
    6 F.3d 1431 (10th Cir. 1993) ................................................................ 5, 9

*Perry v. Safeco Ins. Co. of America*,
    Case No. 18-CV-539-TCK-FHM, 2020 WL 1180726
    (N.D. Okla. Mar. 11, 2020) ................................................................ 11, 12

*Roberts v. State Farm Mut. Auto. Ins. Co.*,
    61 Fed. Appx. 587 (10th Cir. 2003) ................................................................ 5

*Snow White, LLC v. State Auto Prop. and Cas. Ins. Co.*,
    Case No. CIV-14-1397-F, 2016 WL 9558944
    (W.D. Okla. October 14, 2016) ................................................................ 16

*Willis v. Midland Risk Ins. Co.*,
    42 F.3d 607 (10th Cir. 1994) ................................................................ 17

iii

**<u>STATUTES</u>**

Okla. Stat. tit. 12, § 3009.1 ................................................................ 2, 10, 11, 12, 13, 14

Okla. Stat. tit. 23, § 9 ........................................................................................... 17

**<u>OTHER AUTHORITIES</u>**

Fed. R. Civ. P. 56 ................................................................................................... 3

Defendant Safeco Insurance Company of America ("Safeco") respectfully submits its trial brief in accordance with the Court's Scheduling Order.  Doc. No. 58.

## NATURE OF THE CASE AND BASIC FACTS[1]

This case presents the sole issue of whether Safeco underpaid Plaintiff's Underinsured Motorist ("UIM") claim in "bad faith."  Safeco respectfully submits that the undisputed record evidence shows that its evaluation and payment of UIM benefits of $25,000.00 to Plaintiff was reasonable and in good faith, and the parties simply have a legitimate dispute as to the value of the UIM claim.  In Oklahoma, a legitimate dispute is not bad faith.

Plaintiff was involved in an automobile accident caused by another driver, Marcos Salgado ("Salgado") on May 12, 2017.  Salgado had a Policy with Allstate which contained Liability/Bodily Injury limits of $50,000.00 per person.  Following the accident, Plaintiff made a claim with Allstate and also reported a claim to her UIM carrier, Safeco, with whom she had UIM limits of $100,000.00 per person.  As a result of the accident, Plaintiff sought medical treatment for continued pain in her neck and shoulders, and ultimately underwent rotator cuff surgery on her right shoulder in September of 2017.

After the accident, Safeco promptly opened a claim and began investigating the accident.  Safeco's adjuster spoke with Plaintiff to obtain preliminary information regarding the accident and Plaintiff's injuries, and quickly determined that Salgado was

---

[1] A detailed summary of the facts of this case, with supporting citations to record evidence, is included in Safeco's pending Motion for Summary Judgment and Brief in Support.  Doc. No. 69.

100% liable for the accident.  Safeco's adjusters repeatedly requested Plaintiff's recorded statement, which neither she nor her counsel ever provided.  Within a few days of the accident, Plaintiff retained counsel.  Plaintiff's counsel's assistant advised that the "only reason they opened [a] UIM claim is because they always do for every accident."  In order to determine whether UIM had been "triggered" for this accident, Safeco's adjusters promptly and repeatedly followed up with Plaintiff's counsel and Allstate to inquire regarding Allstate's limits; however, Allstate continually refused to supply this information.

In February of 2018, Plaintiff's counsel finally supplied Plaintiff's medical bills and records and made a demand for Plaintiff's UIM Policy limit of $100,000.00.  Safeco's adjuster advised that Safeco was still waiting on receipt of Allstate's limits.  Given Plaintiff's prior car accident in 2015 in which she injured the same shoulder, Safeco's adjuster also requested an independent review of Plaintiff's medical records and asked her counsel to supply her medical records for five years prior to the accident.  In July of 2018, Plaintiff's counsel advised that Allstate had offered to settle Plaintiff's claim against Salgado for his Policy limit of $50,000.00.  Safeco consented to the settlement and waived subrogation.  In September of 2018, upon receipt of all outstanding information, Safeco evaluated the UIM claim.  Pursuant to OKLA. STAT. tit. 12, § 3009.1—and despite Plaintiff's significant prior injuries—Safeco accepted 100% of Plaintiff's medical bills paid by her health insurer.  Safeco also calculated general damages of $48,000.00-$60,000.00.  Based on this evaluation, Safeco promptly issued an undisputed UIM payment of $25,000.00, in addition to the $50,000.00 already paid by Allstate.  Plaintiff, who

disputes the amount of Safeco's payment and has always demanded Policy limits of $100,000.00, then filed this lawsuit for breach of the duty of good faith and fair dealing.

Plaintiff's "claim" is absolutely without merit.   Plaintiff contends that Safeco somehow undervalued her claim.  At the eleventh hour in this lawsuit, Plaintiff now asserts that Safeco should have applied Colorado law with respect to her "paid versus incurred" medical bills and further asserts that Safeco "low-balled" her general damages.   These assertions are groundless.  Safeco acted reasonably and the parties simply have a legitimate dispute regarding the value of the claim.   Safeco's reliance on Oklahoma law was undeniably reasonable, especially as Plaintiff's attorneys have consistently invoked Oklahoma law until submission of an expert report nearly five years after the accident. Plaintiff's request for punitive damages is, likewise, totally unsupported.   Therefore, judgment in Safeco's favor is warranted.[2]

### SUMMARY OF THE LEGAL BASES FOR
### SAFECO'S DEFENSES TO PLAINTIFF'S CLAIMS

**I.     Judgment is Appropriate on Plaintiff's Claim for Breach of the Duty of Good Faith and Fair Dealing.**

The undisputed record evidence demonstrates that Safeco acted in good faith and dealt fairly with Plaintiff at all times.  Plaintiff simply disputes the value Safeco placed on her UIM claim which, in Oklahoma, is not "bad faith."

---

[2] Safeco's Motion for Summary Judgment and Brief in Support (Doc. No. 69) has been fully briefed and remains pending.  Any reference herein to a "trial," "jury," or "judgment" is not to be implied as inconsistent with or contrary to Safeco's Rule 56 Motion.  Safeco respectfully submits that this case should be disposed of on summary judgment.

In Oklahoma, an insurer has a duty to deal fairly and in good faith with its insured. *Dunbar v. State Farm Mut. Auto. Ins. Co.*, Case No. 10-CV-330-GKF-TLW, 2011 WL 5878383, *7 (N.D. Okla. Nov. 23, 2011) (citing *Christian v. American Home Assurance Co.*, 577 P.2d 899, 905 (Okla. 1977)).  To make a prima facie case against an insurance company for bad faith, however, a plaintiff must establish:

> (1) Claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury.

*Bituminous Cas. Corp. v. Pollard*, 508 Fed. Appx. 780, 791 (10th Cir. 2013) (citing *Ball v. Willshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009)) (emphasis added).  Plaintiff bears the burden of proof on each element.  *McCorkle v. Great Atlantic Ins. Co.*, 1981 OK 128, 637 P.2d 583, 587.

"[W]hether an insurer breaches its duty of good faith and fair dealing is dependent on the particular facts and circumstances in each case."  *Haltom v. Great Northwest Ins. Co.*, 460 Fed. Appx. 751, 757 (10th Cir. 2012) (citation omitted).  "The level of culpability required for bad faith is 'more than simple negligence, but less than the reckless conduct necessary to sanction a punitive damage award . . . .'"  *Butterfly-Biles v. State Farm Life Ins. Co.*, Case No. 09-CV-0086-CVE-PJC, 2010 WL 346839, *7 (N.D. Okla. Jan. 21, 2010) (quoting *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005)).  "A clear showing that the insurer acted unreasonably and in bad faith is necessary to show a breach of that duty."  *Dunbar*, 2011 WL 5878383 at *7 (citation and quotation marks omitted).  "'Where an insurer has demonstrated a reasonable basis for its actions, bad

4

faith cannot exist as a matter of law.'" *Id.* (quoting *Beers v. Hillory*, 241 P.3d 285, 293 (Okla. Civ. App. 2010)).

### A.   Safeco's Handling of Plaintiff's UIM Claim Was Reasonable.

Safeco's handling of Plaintiff's UIM claim was reasonable.  An insurer has a duty to "conduct an investigation reasonably appropriate under the circumstances." *Buzzard v. Farmers Ins. Co.,* 1991 OK 127, 824 P.2d 1105, 1109. However, that duty is not unlimited, and is judged according to the circumstances. *Roberts v. State Farm Mut. Auto. Ins. Co.,* 61 Fed. Appx. 587, 590-91 (10th Cir. 2003).  "An error in judgment does not constitute bad faith." *Badillo*, 121 P.3d at 1116 n.15 (citing *National Mut. Cas. Co. v. Britt*, 218 P.2d 1039, 1039 (Okla. 1950)).  Bad faith requires more than a mere mistake on the part of the insurance company.  *Id*.  Oklahoma law requires that an insurer's actions be reasonable and legitimate under the circumstances, not necessarily correct. *Manis v. Hartford Ins. Co.*, 1984 OK 25, 681 P.2d 760, 762; *Oulds v. Principal,* 6 F.3d at 1442 (fact that a reasonable jury could find in favor of an insurer is strong evidence that the dispute is "legitimate" and that the insurer did not engage in bad faith by denying the claim). To establish a cause of action for "bad faith" an insured must prove there was no legitimate dispute. *Manis*, 681 P.2d at 762.

### i.   Safeco's Investigation, Evaluation, and Payment Were Reasonable.

"'Where an insurer has demonstrated a reasonable basis for its actions, bad faith cannot exist as a matter of law.'" *Dunbar*, 2011 WL 5878383, at *7 (citing *Beers v. Hillory*, 2010 OK CIV APP 99, ¶ 26, 241 P.3d 285, 293).  Here, Safeco's investigation, evaluation, and payment of Plaintiff's UIM claim were undeniably reasonable.

Upon receiving notice of the accident, Safeco promptly opened up a UIM claim and commenced its investigation.  Doc. No. 69 at pp. 7-10.  Safeco's adjusters gathered information from Plaintiff regarding the accident and her injuries and treatment and repeatedly requested Plaintiff's recorded statement, which Plaintiff and her counsel notably never provided.  *Id.*  Safeco quickly determined that the other driver, Salgado, was 100% liable, and made consistent efforts to determine Salgado's limits with Allstate.  *Id.* at pp. 6, 8.  Given Plaintiff's prior significant injuries to the same body parts at issue in the subject collision (including Plaintiff's right shoulder), Safeco obtained Plaintiff's prior medical records and requested an independent records review, which Plaintiff agrees was reasonable.  *Id.* at pp. 4-6, 9.  Throughout its investigation, Safeco consistently followed up with Plaintiff's counsel regarding the status of the UIM claim and Plaintiff's injuries and treatment.  *Id.* at p. 8.  Plaintiff agrees that Safeco could not have evaluated her claim prior to receiving her demand package and Allstate's limits.  *Id.* at p. 9.

Once Safeco received Plaintiff's medical bills and records, prior medical records, and Allstate's limits, Safeco promptly evaluated Plaintiff's UIM claim.  *Id.* at pp. 9-12.  Despite Plaintiff's prior significant injuries to the same body parts, Safeco's adjuster, Meyer, accepted 100% of her "paid" medical bills, which were ultimately $25,461.64 (and only $22,500.00 once Optum reduced its subrogation interet), and did not discount any bills due to a preexisting condition.  *Id.* at p. 11.  Meyer also allowed for general damages of $48,000.00-$60,000.00.  *Id.* at p. 12.  Based on her evaluation, Meyer offered Plaintiff $25,000.00 and immediately issued that undisputed payment upon receipt of check drafting instructions from opposing counsel.  *Id.* at p. 12.

As set forth herein, the record evidence demonstrates that Safeco's investigation, evaluation, and payment were timely, thorough, and in compliance with Oklahoma law. Safeco thoroughly and promptly investigated and evaluated the claim and, despite Plaintiff's disagreement with the value of the claim, timely issued payment of the undisputed amount of the UIM claim. Safeco's experts, Diane Luther and Andrew Jayne, have opined that Safeco handled this claim reasonably and within industry standards. *Id.* at p. 13; *see also* Exhibit 1, Expert Report of Andrew Jayne. Safeco's handling of Plaintiff's claim was plainly reasonable, and judgment is appropriate on Plaintiff's claim for "bad faith."

### ii. Safeco's Reliance Upon Oklahoma Law Was Reasonable.

Nearly five years after her automobile accident, Plaintiff now makes the novel assertion that Safeco should have applied Colorado law to her UIM claim.[3] Contrary to Plaintiff's contentions, Safeco's evaluation of Plaintiff's claim under Oklahoma law was reasonable and appropriate. The Supreme Court of Oklahoma has held that

> the validity, interpretation, application and effect of the provisions of a motor vehicle insurance contract should be determined in accordance with the laws of the state in which the contract was made, unless those provisions are contrary to the public policy of Oklahoma, or **unless the facts demonstrate that another jurisdiction has the most significant relationship with the subject matter and the parties**.

*Bohannan v. Allstate Ins. Co*., 1991 OK 64, 820 P.2d 787, 797 (emphasis added). In the case of *Bohannan v. Allstate Ins. Co*., the Oklahoma Supreme Court determined that

---

[3] Plaintiff contends that under Colorado law, Safeco cannot rely on Plaintiff's "paid" medical bills in calculating her special damages.

Oklahoma law applied to the analysis of a UM Policy for a car accident occurring in Oklahoma, even though the applicable Policy emanated from the State of California. *Id.*

Likewise, in *Martin v. Gray*, the insured purchased an automobile insurance Policy in the state of Kansas, moved to Oklahoma where the vehicle was then garaged, and was subsequently involved in an automobile accident in Oklahoma. 2016 OK 114, 385 P.3d 64, 65. Applying the "most significant relationship" analysis, the Supreme Court held that the trial court erred in applying Kansas law in a subsequent "bad faith" action, even though the Policy derived from Kansas. *Id.*

In determining which state's relationship is "most significant," Oklahoma courts often apply four factors: "(1) where the injury occurred; (2) where the conduct causing the injury occurred; (3) each party's domicile, residence, nationality, place of incorporation and place of business; and (4) where the relationship, if any, between the parties occurred." *Hambelton v. Canal Ins. Co.*, 405 Fed. Appx. 335, 337 (10th Cir. 2010) (applying Oklahoma law to a bad faith action arising from an insured's automobile insurance claim). Applying the first two factors of that analysis here, Plaintiff's "injury" and "the conduct causing the injury" certainly occurred in Oklahoma, as the automobile accident and her medical treatment took place in Oklahoma. Doc. No. 69 at pp. 6-7. While Safeco disagrees that its claims handling caused "injury" to Plaintiff, Safeco's claims handling was also directed to Plaintiff in Oklahoma. Concerning the third factor, at all relevant times, Plaintiff was domiciled in Oklahoma.[4] *Id.* at p. 6. With respect to the fourth factor,

_____

[4] Safeco is a corporation incorporated under the laws of the State of New Hampshire with its principal place of business located in Boston, Massachusetts.

although Plaintiff's Policy was incepted in Colorado, the parties' entire relationship and course of dealing with respect to the subject accident and insurance claim was directed to Oklahoma, as Plaintiff moved from Colorado to Oklahoma prior to the subject accident. *Id.* Plainly, Safeco's reliance on Oklahoma law in the handling of Plaintiff's insurance claim—as requested by her counsel—was reasonable and appropriate.

Significantly, Plaintiff's prior counsel requested an evaluation under Oklahoma law, repeatedly invoked Oklahoma law in his communication with Safeco, and never raised Colorado law. *Id.* at p. 12. Indeed, even in her Complaint filed in this lawsuit, Plaintiff asserts no claims under Colorado law but, rather, consistently invokes Oklahoma law. *Id.* at p. 14. It was not until submission of her expert report in this case in December of 2021, nearly five years after the accident, that Plaintiff somehow decided that Colorado law applies to her UIM claim, demonstrating the unreasonableness of this eleventh-hour change in position. Safeco's experts, Diane Luther and Andrew Jayne, have opined that reliance upon Oklahoma law was reasonable and within industry standards, under the facts and circumstances of the claim. *Id.* at p. 13; *see also* Exhibit 1.

Oklahoma law requires that an insurer's actions be reasonable and legitimate under the circumstances, not necessarily correct. *Manis*, 681 P.2d at 762; *Oulds*, 6 F.3d at 1442. Safeco respectfully submits that its reliance upon Oklahoma law in the handling of Plaintiff's UIM claim was, at a minimum, reasonable and appropriate, and judgment in Safeco's favor is warranted.

### iii.   Safeco's Reliance Upon Oklahoma's "Paid Versus Incurred" Statute, OKLA. STAT. tit. 12, § 3009.1, Was Reasonable.

Similarly, Plaintiff has argued that it was somehow error for Safeco to rely on her

"paid" medical bills pursuant to Oklahoma's "paid versus incurred" statute, OKLA. STAT.

tit. 12, § 3009.1.  As discussed herein, Plaintiff's Policy obligates Safeco to pay

> … damages **which an insured is legally entitled to recover** from the owner or operator of an:
> 1.      Uninsured motor vehicle; or
> 2.      Underinsured motor vehicle;
> Because of bodily injury:
> 1.      Sustained by that insured; and
> 2.      Caused by an accident.

Doc. No. 69 at pp. 3-4.

Accordingly, Section 3009.1 speaks directly to what damages Plaintiff (who chose

to file her claims in Oklahoma court) is "**legally entitled to recover**" in an action in

Oklahoma court arising from her automobile accident with Salgado:

> Upon the trial of any civil action arising from personal injury, **the actual amounts paid for any services in the treatment of the injured party, including doctor bills, hospital bills, ambulance service bills, drug and other prescription bills, and similar bills shall be the amounts admissible at trial, not the amounts billed for such expenses incurred in the treatment of the party.** If, in addition to evidence of payment, a party submits a signed statement acknowledged by the medical provider or an authorized representative or sworn testimony that the provider will accept the amount paid as full payment of the obligations, the statement or testimony shall be admitted into evidence. The statement or testimony shall be part of the record as an exhibit but need not be shown to the jury. If a medical provider has filed a lien in the case for an amount in excess of the amount paid, then the bills in excess of the amount paid, but not more than the amount of the lien, shall be admissible.

*Id.* at § 3009.1(A).

Significantly, multiple Oklahoma courts have upheld and applied this statute,

including in the UIM context.  In *Lee v. Bueno*, the Oklahoma Supreme Court upheld the constitutionality of section 3009.1.[5]  2016 OK 97, 318 P.3d 736. The court held that this provision "limits all parties in a personal injury action to admitting evidence of the amount paid for medical services, rather than the amount billed." *Id.* at ¶ 14.  The court found that section 3009.1 was not an unconstitutional "special law" but, rather, "applies uniformly to all personal injury claimants." *Id.* at ¶ 24.  Its purpose is "to ensure uniformity of outcome within the class regardless of circumstances by preventing a party from admitting into evidence amounts they did not have to pay and thus obtaining a potentially greater amount in damages for medical services than the amount actually paid or owed." *Id.*  The court further held that to the extent section 3009.1 "conflicts with operation of the collateral source rule, it controls." *Id.* at ¶ 51.

Other Oklahoma courts have clarified that section 3009.1 applies not only to a pure personal injury action against an alleged tortfeasor, but also in a subsequent tort action against an insurer arising from a UM/UIM claim.  In *Perry v. Safeco Ins. Co. of America*, Mr. Perry sued his UIM insurer, Safeco, for breach of contract and "bad faith" arising from Safeco's handling of his UIM claim.  Case No. 18-CV-539-TCK-FHM, 2020 WL 1180726, *2 (N.D. Okla. Mar. 11, 2020).  The other driver's carrier tendered $25,000.00 in liability Policy limits, which Mr. Perry used to pay his medical bills and attorney fees in full, retaining $13,000.00 for himself.  *Id.*  Plaintiff argued that Safeco should have considered his "incurred" medical expenses of $27,948.34, whereas Safeco contended UIM was never

---

[5] The court in *Lee* analyzed a prior, similar version of this statute, and Safeco respectfully submits that its analysis is still instructive here.

triggered because Plaintiff's health insurer paid only $7,032.31 in satisfaction of Plaintiff's bills. *Id.* at *3. Citing section 3009.1, the court found that "[o]nly the actual amounts paid for any service in treatment of Plaintiff are admissible." *Id.* The court held that Safeco acted reasonably in evaluating the claim, including through its reliance on section 3009.1 in evaluating the UIM claim, and granted summary judgment in Safeco's favor on Plaintiff's claims for breach of contract, bad faith, and punitive damages. *Id.* at *2-7.

Here, as in the *Perry* case, Safeco acted reasonably in relying on Plaintiff's "paid" medical bills in its UIM evaluation, and judgment is appropriate. Indeed, Safeco's experts, Diane Luther and Andrew Jayne, concur that Safeco's reliance on 3009.1 was appropriate and within insurance industry standards. Doc. No. 69 at Exhibit 7; Exhibit 1. Plaintiff has argued that it was somehow improper for Safeco to rely on the documentation received from Optum in calculating the amount of Plaintiff's "paid" medical bills. This argument is a red herring. There is no genuine dispute as to the amount ultimately paid in satisfaction of Plaintiff's medical bills. Indeed, it was **Plaintiff's counsel** who not only supplied the final documentation from Optum but also relied on such documentation in giving check drafting instructions to Safeco for the UIM payment. Doc. No. 69 at p. 12. Plaintiff has proffered no evidence showing that some other amount was paid in satisfaction of Plaintiff's medical bills. Again, Plaintiff testified that she has no outstanding balances, liens, or out-of-pocket amounts owed to any provider. Doc. No. 69 at pp. 7, 13. Any argument by Plaintiff that it was improper for Safeco to rely upon the documents supplied by Optum is unsupported and should be disregarded.

As set forth herein, Safeco respectfully submits that its reliance on Oklahoma's

"paid versus incurred" statute, OKLA. STAT. tit. 12, § 3009.1, in the evaluation of Plaintiff's UIM claim was reasonable.  To hold otherwise would allow Plaintiff ultimately to admit into evidence amounts that neither she nor her health insurer had to pay to her providers, permitting her to obtain a greater amount in damages for medical services than the amount actually paid or owed, and contravening the legislature's intent.  *Lee*, 2016 OK 97 at ¶ 24. Judgment in Safeco's favor is appropriate on Plaintiff's claim for "bad faith."

### B.      Plaintiff and Safeco Have a Legitimate Dispute Regarding the Amount of Her UIM Claim.

Plaintiff and Safeco have a legitimate dispute as to the amount of her UIM claim. "An insurer's refusal to pay is not unreasonable or in bad faith when there is a legitimate dispute concerning coverage."  *Dunbar*, 2011 WL 5878383, *17 (citing *Andres*, 2009 OK CIV APP 97 at ¶ 17).  *See also Haltom.*, 460 F. App'x at 757 ("it is clear under Oklahoma law that an insurer also does not breach its duty of good faith and fair dealing by . . . litigating with its insured where a legitimate and reasonable dispute exists as to coverage or the amount of the claim").  "The decisive question is whether the insurer has a good faith belief, *at the time its performance was requested, that it had justifiable reason for withholding payment under the policy*."  *Dunbar*, 2011 WL 5878383, at *7 (quoting *Duensing v. State Farm Mut. Auto Ins. Co.*, 2006 OK CIV APP 15, 131 P.3d 127 at ¶ 38 (emphasis in the original)).

Here, Plaintiff and Safeco simply have a legitimate dispute as to the amount of Plaintiff's UIM claim.  Plaintiff contends that Safeco should have considered her "incurred" medical bills rather than the amounts paid to her providers, and claims that

Safeco undervalued her general damages. In contrast, Safeco asserts that it properly accepted 100% of Plaintiff's "paid" medical bills pursuant to section 3009.1, despite Plaintiff's prior, significant injuries to the same body parts, including her right shoulder. Doc. No. 69 at p. 11. Safeco further notes that its adjuster allowed general damages of $48,000.00-$60,000.00, based on Plaintiff's specific medical treatment and history as well as factors including Plaintiff's recovery period, the impact on her lifestyle, permanency, and disability. *Id.* at p. 12. Safeco's evaluation was certainly reasonable, especially given Plaintiff's prior, significant medical history. *Id.* at pp. 4-6. Indeed, in discovery in this case, Safeco has unearthed additional injuries Plaintiff did not disclose to Safeco, including a 2006 automobile accident resulting in multiple injuries (including her right shoulder) and a related workers' compensation claim in which Plaintiff received $32,500.00 and was found to be 20% permanently disabled. *Id.*

Safeco respectfully submits that the facts of *Gov't Emps. Ins. Co. v. Quine*, while not identical, are instructive here. 2011 OK 88, 264 P.3d 1245. There, the insureds had an automobile insurance Policy with Geico, which contained UM/UIM benefits of $100,000.00 per person. *Id.* at 1246. One of the insureds was involved in a multi-car accident, submitted medical bills totaling $9,904.05, and settled with the tortfeasor's liablity carrier for $13,890.00. *Id.* at 1246-1247. The insured then made a UIM claim with her carrier, Geico. *Id.* at 1247. Geico made multiple settlement offers, contingent upon execution of a full and complete release, which were unsuccessful. *Id.* Geico then filed a declaratory judgment action in federal court seeking an order that neither the Policy nor

Oklahoma law required Geico to pay its insured the alleged "undisputed amount." *Id.* at 1248. The insured counterclaimed for "bad faith." *Id.*

In its analysis, the Supreme Court noted that the insured received compensation from the tortfeasor's insurer in excess of her special damages. *Id.* at 1250. Geico determined that the insured was entitled to some amount of UIM benefits for her noneconomic/general damages. *Id.* The court noted, "[t]he parties' could not agree on an appropriate value for [the insured's] general damage claim; thus, a legitimate dispute arose." *Id.* The court reasoned, "GEICO's refusal to issue an advance payment on [the insured's] UIM claim presents a scenario far different than one involving a request for partial payment needed to satisfy unpaid medical expenses, lost wages, or other economic/special damages—cases where the impact of the loss is direct, immediate, and measurable with reasonable certainty." *Id.* The only portion of the plaintiff's claim remaining was "those indeterminable sums attributable to general damages." *Id.* at 1250-1251. Therefore, Geico's refusal to pay UIM benefits did not amount to a breach of the duty of good faith and fair dealing. *Id.* at 1251.

Safeco respectfully submits that the facts of the case at hand warrant the same result. Here, as in *Quine*, Plaintiff has certainly recovered benefits to cover the amount of her "paid" medical bills of $25,461.64 and even her "incurred" medical bills of $63,962.13. Namely, Plaintiff has received $50,000.00 in Bodily Injury/Liability benefits from Allstate and $25,000.00 in UIM benefits from Safeco. *Id.* at pp. 10, 12. The only item remaining in dispute is the "indeterminable" amount remaining from general damages. Safeco

respectfully submits that, as in *Quine*, the dispute with respect to the payment of additional general damages is simply not bad faith, as a matter of law.

Here, Plaintiff's dispute regarding the value of her UIM claim is simply not "bad faith." *See Snow White, LLC v. State Auto Prop. and Cas. Ins. Co.*, Case No. CIV-14-1397-F, 2016 WL 9558944, *4-5 (W.D. Okla. October 14, 2016) (granting summary judgment on the bad faith claim where the insurer argued there was a legitimate coverage dispute and holding, "an insurer does not breach its duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a legitimate dispute as to coverage or the amount of the claim, and the insurer's position is reasonable and legitimate"). Judgment in Safeco's favor is appropriate.

### C.   Safeco's Conduct was not the Direct Cause of Plaintiff's Injury.

Plaintiff is also unable to show that any act by Safeco was the direct cause of injury to Plaintiff. Plaintiff claims to have incurred $63,962.13 in medical bills as a result of this accident. Doc. No. 69 at p. 11. Optum ultimately paid $25,461.64 in satisfaction of those medical bills, and accepted only $22,500.00 in satisfaction of its subrogation interest, and Plaintiff has testified that she has no outstanding liens, balances, or out-of-pocket amounts owed. *Id.* at pp. 12, 13. Plaintiff's injuries and medical bills were not caused by Safeco but, rather, by the subject accident. In compensation for her injuries, Plaintiff received $50,000.00 from Allstate, $25,000.00 in UIM benefits from Safeco, and $5,000.00 in Medical Payments benefits from Safeco. *Id.* at pp. 10, 12, and 9.

Where "there is no competent evidence from which a jury could reasonably find a causal nexus between the act(s) or omission(s) deemed tortious and the injury," the

question of proximate cause may be determined by the Court. *Gillham v. Lake Country Raceway*, 2001 OK 41, 24 P.3d 858, 860. Since Plaintiff cannot show that any act on Safeco's behalf was the direct cause of her injury, judgment on Plaintiff's claim for breach of the duty of good faith and fair dealing is warranted.

## II.   Judgment in Favor of Safeco on the Issue of Punitive Damages is Proper.

Safeco respectfully submits that judgment on Plaintiff's claim for punitive damages is proper. Even where there is evidence to support the recovery of actual damages in a bad faith action against an insurer, which there is not here, submission of the issue of punitive damages to a jury may be improper. *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 614-15 (10th Cir. 1994) (citing *McLaughlin v. National Benefit Life Ins. Co.*, 772 P.2d 383, 385, 387, 389 (Okla. 1988)). Punitive damages do not, *ipso facto*, follow from *every* breach of the duty of good faith and fair dealing. *Id.* (citing *McLaughlin*, 772 P.2d at 385). "Under Oklahoma law, punitive damages may be awarded in addition to actual or compensatory damages *only* upon proof that a defendant 'has been guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed . . . .'" *Id.* (citing OKLA. STAT. tit. 23, § 9(A)) (emphasis added).

In *McLaughlin*, the Oklahoma Supreme Court affirmed the trial court's demurrer for the defendants on the punitive damages claim in a bad faith action concerning a life insurance policy. 772 P.2d at 389. There, as is the situation in this present action, the undisputed evidence demonstrated a legitimate controversy as to the amount the insureds claimed they were owed. *Id.* The Supreme Court explained, "[i]n the absence of evidence

to show that [the insurer's] actions were tainted by oppression, fraud, malice or gross negligence there was no basis for submission of the punitive damage issue to the jury." *Id.*

Here, there is no evidence to support an award of punitive damages. Safeco was reasonably prompt and thorough in its investigation and evaluation and properly issued an undisputed amount payment of $25,000.00 once it was able to evaluate the claim. Doc. No. 69 at p. 12. Plaintiff disputes the value of her claim, but has not presented **any** evidence of acts which were intentionally wrongful, oppressive, or fraudulent, and there is no basis for submission of the punitive damages issue to a trier of fact. Safeco respectfully submits it is entitled to judgment on the claim for punitive damages.

## ANTICIPATED EVIDENTIARY ISSUES

Safeco's Motions in Limine address all evidentiary issues that Safeco believes that Court should be aware of and address in advance of trial. Safeco respectfully seeks leave to raise at a later date any subsequent additional issues that may arise.

## AUTHORITIES IN SUPPORT OR OPPOSITION TO A RULE 50 MOTION

Authorities in support of or in opposition to a Rule 50 Motion are included in the legal bases for defenses section above.

## UNUSUAL ISSUES THAT MIGHT ARISE AT TRIAL

Safeco believes at this time that any unusual evidentiary issues have already been briefed in Safeco's Motions in Limine and above.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Safeco Insurance Company of America respectfully requests that the Court enter judgment in favor of Safeco and against Plaintiff Quinda Beeson as to all of her claims.

Respectfully submitted,

**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

*s/William W. O'Connor*

William W. O'Connor, OBA No. 13200
Margo E. Shipley, OBA No. 32118
320 South Boston Avenue, Suite 200
Tulsa, OK  74103-3706
Telephone: (918) 594-0400
Facsimile: (918) 594-0505
boconnor@hallestill.com
mshipley@hallestill.com

**ATTORNEYS FOR DEFENDANT SAFECO INSURANCE COMPANY OF AMERICA**

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on this 1st day of February, 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

   Simone Fulmer
   Jacob L. Rowe
   Andrea R. Rust
   Harrison C. Lujan
   Madison Botizan

   **ATTORNEYS FOR PLAINTIFF**

            *s/William W. O'Connor*
            William W. O'Connor

5156889.1:003439.00097