IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **Quinda Beeson,** | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| v. | )     Case No. CIV-20-327-SLP |
| | ) |
| **Safeco Insurance Company of America,** | ) |
| | ) |
|       **Defendant.** | ) |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO STAY ALL EXISTING PRETRIAL PROCEEDINGS AND REOPEN DISCOVERY**

COMES NOW Plaintiff Quinda Beeson and presents the following Reply to Defendant Safeco Insurance Company of America's Response Brief in Opposition to Plaintiff's Motion to Stay Pretrial Proceedings and Reopen Discovery [Doc. 140] ("Defendant's Response").

**I. Counsel for Plaintiff did not violate the Oklahoma Rules of Professional Responsibility.**

In responding to Plaintiff's Motion, Defendant accuses Plaintiff's counsel of violating Oklahoma Rules of Professional Conduct, Rule 4.2 which prohibits an attorney from communicating with individuals represented by counsel. This accusation is frivolous for several reasons.

First, in response to direct communications made from Mr. Keffer to Fulmer Sill, PLLC, Case Manager Shelley Hicks and Associate Attorney Madison Botizan, simply took

1

messages and forwarded them to the attorney responsible for handling Plaintiff's case, the undersigned, Jacob L. Rowe.

In Defendant's Response, defense counsel William W. O'Connor writes:

> "[I]mmediately upon being contacted by Alex Keffer, attorney Madison Botizan was obligated to inform Keffer that she could not speak with him and to terminate the conversation."

Defendant's Response, Doc. 140, p. 13. The facts before the Court show that Ms. Hicks and Ms. Botizan did exactly that.

Thereafter, the undersigned contacted Mr. O'Connor directly to discuss the matter. During that call, Mr. O'Connor was unaware that Safeco had made a tender of Plaintiff's UM benefits. The following day, the undersigned emailed Mr. O'Connor. 3.17.22 Email from Rowe, Doc. 140-2. In response, Mr. O'Connor lodged accusations of ethical violations against Plaintiff's counsel and claimed Keffer "mistakenly believed that the confidential offers exchanged at the mediation on February 14 meant that he needed to pay the balance of the Policy limits." 3.18.22 Letter from O'Connor, Doc. 140-3. In this letter, Mr. O'Connor mistakenly claims that both communications from Keffer to Fulmer Sill were received by Ms. Botizan. The undersigned responded by correcting Mr. O'Connor's understanding of the facts and further explaining Plaintiff's position. Ex. 1 - 3.28.22 Email from Rowe. Soon after, the undersigned and Mr. O'Connor conducted a telephone conference pursuant to LCvR 37.1 and Plaintiff's Motion followed.

There is little to support the ethical violations alleged by Mr. O'Connor. First, an insurer's obligation to handle claims in good faith persists in the face of pending bad faith

litigation. *See Linn v. Okla. Farm Bur. Mut. Ins. Co.,* 479 P.3d 1013 (Okla. Civ. App. 2020). In *Linn*, the Oklahoma Court of Civil Appeals discussed the propriety of a trial court allowing a plaintiff to elicit testimony from an insurance adjuster regarding an insurer's decision to withhold payment of a claim "until the time of trial." *Id.* at 1022. The defendant insurer claimed such testimony was improper, claiming the testimony would hinder a defendant's ability to fully defend itself. *Id*. The Oklahoma Court of Civil Appeals rejected the insurer's position based on factual distinctions between the case before it and the authorities relied upon by the defendant. *Id*. In doing so, the Court noted "simply because the insurer's conduct should not, under the foregoing circumstances, give rise to a bad faith claim does not necessarily mean that the conduct cannot constitute additional evidence of pre-existing bad faith." *Id.* (quoting Allan D. Windt, *2 Insurance Claims and Disputes Sec. 9:28* (6th ed.)). Oklahoma's Federal Court for the Northern District of Oklahoma has relied on *Linn* in denying a request from a defendant insurer to prohibit evidence of post-litigation claims handling activity. *See Hellard v. Mid Century Ins. Co.*, 519 F.Supp. 1025, 1031-32 (N.D. Okla. 2021). Thus, there is clearly a qualitative difference between Plaintiff's UM Claim and Plaintiff's Bad Faith Claim.

      Mr. Keffer's communications to Fulmer Sill, PLLC clearly involved Plaintiff's UM Claim, not Plaintiff's Bad Faith Claim which is the subject matter of the representation involving Mr. O'Connor. As noted above, regardless of the existence of the pending litigation, Defendant continues to have a legal obligation to investigate, evaluate, and pay Plaintiff's insurance claim. Mr. Keffer's messages dealt exclusively with Defendant's desire to make additional payments under Plaintiff's UM Claim, not resolution of

Plaintiff's Bad Faith Claim. As such, the receipt of his messages is exceedingly appropriate. *See* Oklahoma Rule of Professional Conduct Rule 4.3, comment 4 ("This Rule does not prohibit communication with a represented person, or an employee or agent of such a person, concerning matters outside the representation.").

Further, in actions such as the one before the Court, it is not uncommon for insurance companies to bifurcate claims such that claims adjusters handling Bad Faith Claims are separated from claims adjusters handling UM Claims. Such a process allows an insurance company to defend itself in the course of litigation, while affording insureds the full protection of their insurance policies. Additionally, it is not uncommon for insurance companies to implement internal policies in which the claims representatives handling a particular claim are given the authority to negotiate directly with opposing counsel. In fact, Liberty Mutual Insurance Company, parent company of Defendant, is such a company and has, at various times in the past, empowered its adjusters to negotiate directly with attorneys during the course of litigation. See Ex. 2 - Affidavit of Welch.

Mr. O'Connor's claim that members of Fulmer Sill, PLLC violated the Oklahoma Rules of Professional conduct in a publicly available filing are wholly inappropriate. Ms. Hicks and Ms. Botizan simply received a message from an employee of Safeco regarding the payment of Ms. Beeson's UM Claim and neither engaged in any discussion with him about the subject matter of the instant litigation: Plaintiff's Bad Faith Claim. Thus, both acted within the expectations of O'Connor set forth above and the scope of ethical conduct set forth by Rule 4.2.

## II. The reopening of discovery is warranted.

"Discovery plays an important role in our adversarial system: full development of the facts surrounding a matter furthers 'the purpose discovery is intended to serve -- advancing the quest for truth.'" *Trujillo v. Bd. Of Educ. Of Albuquerque Pub. Schs.,* Nos. CIV 02-1146-JB/LFG and 03-1185-JB/LFG, 2007 WL 1306560, at *2 (D.N.M. Mar. 12, 2007)(quoting *Taylor v. Illinois*, 484 U.S. 400, 430 (1988)). Based upon the representations made by Keffer in his affidavit, read in light of the testimony gathered by Plaintiff during the course of discovery, it appears as if there are critical facts that Defendant has failed to disclose. Consider the following timeline:

**8/20/2018 -** The adjuster handling Plaintiff's UM claim, establishes a $100,000.00 claim reserve. Ex. 3 - 8.20.18 BI Transfer Analysis, **[Safeco 344-45].** This amount represents Defendant's "best guess at the most probable outcome" of the claim according to Defendant's own Corporate Representative. Ex. 4 - Deposition of Fox, p. 88 - 89.

**9/28/2018 -** Plaintiff's claim is transferred to adjuster Barbara Meyer who completes a Bodily Injury Evaluation ("BIE") Worksheet which concludes with a note confirming Defendant's $100,000.00 UM claim reserve with "no changes recommended". Ex 5 - 9.28.18 Bodily Injury Evaluation Worksheet ("BIE")[1], **[Safeco 139-44]**. The BIE is intended to be a summary of Defendant's claim investigation and evaluation. Ex. 4 - Deposition of Fox, p. 124; Ex. 6 - Deposition of Meyer, p. 151. Thereafter, Defendant offered Plaintiff UM benefits in the amount of $25,000.00 which is accepted as a tender of undisputed amounts due to her under the policy.

**11/6/2018** - Ms. Meyer creates a Claim Note indicating the reserve on Plaintiff's UM Claim has been changed to $30,000.00 and reflects Defendant's $25,000.00 unconditional UM tender. Ex. 7 - 11.6.18 Claim Note **[Safeco 118].**

**2/24/2020** - This action is filed and the parties begin conducting discovery.

**2/11/2021 -** Ms. Meyer is deposed. She testifies that she continues to oversee the handling of Plaintiff's UM claim in conjunction with litigation counsel, Mr. O'Connor, and

---

[1] Defendant's BIE is undated. However, the claim file produced in this matter is ordered chronologically and Ex. 5 is found between various claim notes dated September 28, 2018.

that no substantive claims handling actions have taken place since the completion of the BIE.  Ex. 6 - Deposition of Meyer, p. 8-12.

    **3/25/2021** - Ms. Meyer retires and Plaintiff's UM claim was reassigned to Keffer, who, presumably, continued handling it in conjunction with Mr. O'Connor.  Keffer Affidavit, Doc. 140-1.

    **1/24/2022** - Plaintiff deposes Diana Fox, Defendant's duly authorized corporate representative.  Ms. Fox testifies that Defendant is continuing to handle Plaintiff's UM Claim, but that she did not review any claim file information entered after the filing of the instant suit.  Ex. 4 - Deposition of Fox, p. 152-53.

    **2/11/2022** - The parties completed the pretrial briefing cycle.  Both parties filed motions for summary judgment and extensive motions *in limine*.

    **2/14/2022** - The parties attend mediation. Keffer appears as Defendant's representative and, presumably, authorizes Mr. O'Connor to make various offers to settle Plaintiff's Bad Faith Claim.  Keffer Affidavit, Doc. 140-1.

    **3/14/2022** - Keffer contacts Fulmer Sill and leaves a message with Ms. Hicks indicating Defendant wished to tender $75,000.00 representing the remaining limit of her UM Policy as the undisputed amount due to Plaintiff for her UM Claim before the Court entered its orders on the pending pretrial motions.  Keffer Affidavit, Doc. 140-1; Hicks Affidavit, Doc. 136-3.

    **5/5/2022** - Keffer executes an Affidavit indicating he was mistaken about the nature of Defendant's offer to settle Plaintiff's Bad Faith Claim.  Keffer Affidavit, Doc. 140-1. Keffer indicates his offer to tender the remaining policy benefit due under Plaintiff's UM Claim "was not based on any new information or updated evaluation." *Id.*

First, the facts before the Court create the inference that there was significant activity related to Defendant's handling of Plaintiff's UM Claim between the deposition of Ms. Meyer on February 11, 2021, and the mediation conducted on February 14, 2022. Documents produced by Defendant in this matter show no substantive change in its claims handling position *after* making payment to Plaintiff in the amount of $25,000.00 representing the undisputed portion of its evaluation.  Further, Ms. Meyer testified that Defendant had conducted no additional action on the handling of Plaintiff's UM Claim as

of February 11, 2021, but that Defendant continued handling the UM Claim in conjunction with litigation counsel.  There is simply nothing within the claim file materials produced that would lead a seasoned insurance claims adjuster to believe that Defendant had changed its evaluation of the unconditional amount of benefits due under Plaintiff's UM Claim and an additional $75,000.00 payment UM Claim payment was required.  It is illogical to believe that Keffer took action *sua sponte*.  Far more likely is the prospect that Defendant's UM claim file contains post-litigation analysis and reevaluation consistent with Plaintiff's litigation position.

Next, although Mr. Keffer's affidavit indicates Defendant's offer to pay the "undisputed amount" of Plaintiff's UM Claim "was not based on any new information or updated evaluation", this seems unlikely and / or misleading.  During his call with Ms. Hicks, Mr. Keffer referenced motions currently pending before the Court.  Although he didn't specifically note which motions, it is clear Defendant, through Mr. Keffer was aware of the motions, including Plaintiff's *Motion for Partial Summary Judgment* [Doc. 73], in which Plaintiff details how Defendant should have properly applied Colorado law to the assessment of UM benefits due to Plaintiff.  It is possible that Mr. Keffer or one of his superiors read these motions and determined that Safeco *should have* utilized Colorado law in its handling of Plaintiff's claim.

Given that Mr. Keffer is currently assigned to Plaintiff's UM Claim and Defendant is under a continuing obligation to continue handling the claim, any impact pleadings in this matter have on Defendant's evaluation of Plaintiff's pending UM Claim are discoverable.  *See Linn v. Okla. Farm Bur. Mut. Ins. Co.,* 479 P.3d 1013 (Okla. Civ. App.

2020)("simply because the insurer's conduct should not, under the foregoing circumstances, give rise to a bad faith claim does not necessarily mean that the conduct cannot constitute additional evidence of pre-existing bad faith") (quoting Allan D. Windt, *2 Insurance Claims and Disputes Sec. 9:28* (6th ed.)). This is especially true in the event Defendant's change of position conflicts with that it intends to present to the jury in this matter as evidenced in its pretrial filings *and* benefits Defendant believes are due and owing have been or are being withheld from Plaintiff.

Additionally, testimony from Ms. Meyer and Ms. Fox, indicate that Defendant has continued to handle Plaintiff's UM Claim, but that no activity has occurred. Mr. Keffer's actions and his recent affidavit indicate Defendant *has* engaged in claims handling activity such that he believed a $75,000.00 tender on Plaintiff's UM Claim was warranted. Plaintiff is in possession of no documents regarding Defendant's handling of Plaintiff's UM Claim *after* December 27, 2019 and there is now evidentiary support to infer such documents exist. Absent an Order from the Court to produce *all* Defendant's post-litigation UM Claim documents, reopening discovery is the only means of ascertaining whether this is the case.

Finally, it is possible that Mr. O'Connor, who Ms. Meyer described as handling Plaintiff's UM Claim in conjunction with Defendant's claims handling employees, has entangled himself in the handling of Plaintiff's UM Claim. If this is the case, it is also possible that certain communications between defense counsel and defendant are relevant for the purpose of determining whether Defendant has upheld its continuing obligation to handle Plaintiff's UM Claim in good faith. If this were the case, attorney client privilege may be waived and the information exchanged discoverable. *See Lindley v. Life Investors*

*Ins. Co. of America*, 267 F.R.D. 382, 395 (N.D. Okla. 2010)(whether an attorney-client privilege is applicable does not apply if communication is predominant purpose of the same is the business of insurance, rather than litigation).

**III.     Conclusion.**

Mr. Keffer's recent actions and his sworn testimony create a strong inference that Safeco's claims handling position has changed materially.  Testimony from Defendant's own Corporate Representative indicates Plaintiff's UM Claim remains open, yet no documents or information have been produced evidencing any activity after December 27, 2019 has been produced and there is nothing within the documents disclosed by Defendant that would lead a seasoned claims adjuster to such an inference.  Plaintiff respectfully asks the Court reopen discovery and order Defendant to immediately produce Plaintiff's post-litigation UM Claim file, as well as produce Mr. Keffer for deposition.

Respectfully submitted,

/s/*Jacob L. Rowe*
Jacob L. Rowe, OBA #21797
Madison Botizan, OBA #34615
FULMER SILL PLLC
1101 N. Broadway Ext., Suite 102
Oklahoma City, OK  73103
Phone:   (405) 510-0077
Fax:   (800) 978-1345
Email: jrowe@fulmersill.com
            mbotizan@fulmersill.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th of May, 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

William W. O'Connor
Margo E. Shipley
320 S. Boston Ave., Suite 200
Tulsa, OK  74103
boconnor@hallestill.com
mshipley@hallestill.com

/s/Jacob L. Rowe