```
 1               IN THE UNITED STATES DISTRICT COURT

 2             FOR THE WESTERN DISTRICT OF OKLAHOMA

 3

 4    QUINDA BEESON,

 5         Plaintiff,

 6    vs.                                  No. CIV-20-327-SLP

 7    SAFECO INSURANCE COMPANY OF
      AMERICA,
 8
           Defendant.
 9

10            VIRTUAL VIDEO-RECORDED DEPOSITION OF
               CORPORATE REPRESENTATIVE DIANA FOX
11                Taken on Behalf of the Plaintiff
           On January 24, 2022, beginning at 9:32 a.m.
12           All Parties Appearing Remotely Via Zoom

13                        APPEARANCES:

14    Appearing on behalf of the PLAINTIFF

15              Jacob J. Rowe
                FULMER SILL
16              1101 North Broadway, Suite 102
                Oklahoma City, Oklahoma 73103
17              (405) 510-0077
                Jrowe@fulmersill.com
18
      Appearing on behalf of the DEFENDANT
19
                William W. O'Connor
20              HALL ESTILL
                320 South Boston Avenue, Suite 200
21              Tulsa, Oklahoma 74103-3706
                (918) 594-0588
22              Boconnor@hallestill.com

23

24
      Reported By:  Becky C. Dame, CSR, RPR
25
```

1       A    Yes.

2       Q    And "general damages" refers to the types

3  of damages that folks in the noninsurance world

4  would consider pain and suffering damages; true?

5       A    Yes.

6       Q    He also notes that the tortfeasor has

7  $50,000 in liability coverage; correct?

8       A    Yes.

9       Q    And it indicates that he would be setting

10 the $100,000 UIM/BI; correct?

11      A    Yes.

12      Q    That last section setting $100,000 UIM/BI,

13 that is a reserve setting for Mrs. Beeson's claim;

14 correct?

15      A    Yes.

16      Q    And Safeco's own claim-handling guidelines

17 teach adjusters that the reserve that is to be set

18 on a claim is the expected settlement value of a

19 claim given everything they know when the reserve is

20 set; correct?

21           MR. O'CONNOR:  Objection to form.

22           THE WITNESS:  I wouldn't -- I wouldn't say

23 that.  I would say it's a best guess at the most

24 probable outcome.

25 BY MR. ROWE:

```
 1        Q    So Mr. Linwood's best guess and the most
 2   probable outcome of Mrs. Beeson's claim is that she
 3   would receive payment of the full value of her
 4   $100,000 UM policy; correct?
 5        A    Yes.
 6        Q    I'd like to draw your attention now to a
 7   document Bates stamp Safeco 342.  This is a document
 8   we began reviewing just a few moments ago.  You've
 9   taken a look at this before in your review of the
10   claim file?
11        A    I have.
12        Q    This is a claim note entry from Mr. Jung
13   Wong, who is a Safeco claims manager, regarding a
14   complex triage of the Beeson claim; true?
15        A    Yes.
16        Q    The substance of the note does not
17   indicate who was involved with the triage of the
18   claim; correct?
19        A    I'm not sure I understand your question.
20        Q    We know that Mr. Wong indicates that is a
21   complex triage to Mrs. -- to BARMEY; correct?
22        A    Yes.
23        Q    And you know that that is an employee code
24   for the adjuster Barbara Meyer; true?
25        A    Yes.
```

```
 1    Mr. Ventura on November 6th confirming that she is
 2    issuing payment in the amount of $25,000 as an
 3    unconditional tender and that Mrs. Beeson is not
 4    accepting the same as full and final payment; true?
 5         A    Yes.
 6         Q    And also noting that Mr. Ventura objects
 7    to the use of Safeco's using billed amounts -- or
 8    paid amounts versus billed amounts in evaluating her
 9    claim; true?
10         A    Yes.
11         Q    I'd like to draw your attention to a
12    document bearing Bates stamps Safeco 139 through
13    144, which is titled "Bodily Injury Evaluation
14    Worksheet."
15              You've reviewed this document, have you
16    not?
17         A    I have.
18         Q    And this is the -- kind of the summation
19    of Mrs. Meyer's evaluation of the damages that
20    Ms. Beeson is entitled to recover under the terms of
21    her UM policy; true?
22         A    Yes.
23         Q    I'd like to go to the final page of this
24    document.  There's a spreadsheet on page -- Safeco
25    144 that contains kind of the end result of her work
```

```
 1   records?
 2       A    Yes.
 3       Q    Those records were not in the original
 4   claim file associated with Safeco's handling of this
 5   claim; true?
 6       A    That's true.
 7       Q    And Safeco is not continuing to handle
 8   Mrs. Beeson's UM claim; correct?
 9       A    I would not say that is correct.
10       Q    Okay.
11       A    It's still open.  We're ready to negotiate
12   it.
13       Q    Okay.  Did you look at the claim file from
14   the continued handling the UM claim post litigation?
15       A    I did not.
16       Q    Do you know whether or not there is a
17   post-litigation UM claim-handling file?
18       A    I assume there is.  It's still open.
19       Q    Given that one of the topics you're
20   testifying on today are the facts that Safeco
21   intends to rely at trial on, does Safeco intend to
22   utilize any material within that continuing claim
23   file in defense of the allegations made by
24   Mrs. Beeson here?
25            MR. O'CONNOR:  Objection to form.
```

```
 1                THE WITNESS:  I don't know.
 2   BY MR. ROWE:
 3       Q    Do you know whether or not Safeco has
 4   revised its evaluation of the UM benefits due to
 5   Mrs. Beeson?
 6       A    I have not seen anything after the
 7   litigation.
 8       Q    Okay.  Mrs. Fox, do you believe that you
 9   have understood the questions that I have asked of
10   you today?
11       A    I think so.
12       Q    Are there any answers to questions or
13   testimony that you would like to revise or edit at
14   this time?
15       A    No.
16            MR. O'CONNOR:  Object to the form.
17            She'll review it when she gets the
18   transcript.
19            MR. ROWE:  Sure.  I just -- I heard a
20   lawyer do that a long time ago, Ms. Fox, and I'm --
21   you know, after we take a break, I do it.
22            THE WITNESS:  None that I remember.
23            MR. ROWE:  He was a defense lawyer, Bill,
24   that I think recently retired.
25   BY MR. ROWE:
```