```
 1                IN THE UNITED STATES DISTRICT COURT

 2               FOR THE WESTERN DISTRICT OF OKLAHOMA

 3

 4    QUINDA BEESON,

 5         Plaintiff,

 6    vs.                                    No. CIV-20-327-SLP

 7    SAFECO INSURANCE COMPANY OF
      AMERICA,
 8
           Defendant.
 9

10

11         VIDEOCONFERENCE DEPOSITION OF BARBARA MEYER
                  Taken on Behalf of the Plaintiff
12         On February 11, 2021, beginning at 9:36 a.m.
                   All Parties Appearing Via Zoom
13

14                         APPEARANCES:

15    Appearing on behalf of the PLAINTIFF

16             Jacob J. Rowe
               FULMER SILL
17             1101 North Broadway, Suite 102
               Oklahoma City, Oklahoma 73103
18             (405) 510-0077
               Jrowe@fulmersill.com
19
      Appearing on behalf of the DEFENDANT
20
               William W. O'Connor
21             HALL ESTILL
               320 South Boston Avenue, Suite 200
22             Tulsa, Oklahoma 74103-3706
               (918) 594-0588
23             Boconnor@hallestill.com

24

25    Reported By:  Becky C. Dame, CSR, RPR
```

1  besides the claim file?

2  A   Not that I can recall.

3  Q   Did you review any of the pleadings that
4  have been filed in this case?

5  A   That would be part of the claim file.

6  Q   Okay.  So in your version of the claim
7  file, you also see the pleadings that have been
8  filed?

9  A   Yes.

10     MR. O'CONNOR:  Objection to form.

11 BY MR. ROWE:

12 Q   And, Ms. Meyer, when we're talking -- and
13 it's going to be difficult because there might be
14 some video lag -- before you answer, you might want
15 to give Mr. O'Connor just a split second to object
16 in case I ask you something that's inappropriate or
17 squirrely; okay?

18 A   Sure.

19 Q   So I'll try to rephrase that.

20     The claim file that you reviewed before
21 the deposition today included some of the pleadings
22 from the legal case that brings us here today?

23 A   Correct.

24 Q   Do you remember which pleadings were in
25 the claim file?

 1      A    There's a copy of the Petition that was
 2   filed and the Interrogatory responses that
 3   Ms. Beeson provided to us.
 4      Q    Did the claim file include the discovery
 5   responses that Safeco has provided to Ms. Beeson?
 6      A    I believe that there were, yes, Safeco's
 7   answer.
 8      Q    Okay.  We recently have filed some
 9   pleadings in regard to a Motion to Compel Additional
10   Discovery.  Did you see any of those pleadings in
11   the claim file?
12      A    I do not recall seeing that.
13      Q    Who's handling Ms. Beeson's claim right
14   now at Safeco?
15           MR. O'CONNOR:  Object to the form.
16   BY MR. ROWE:
17      Q    I'll ask it a different way.
18           Is there anybody at Safeco that is
19   continuing to handle Ms. Beeson's underinsured
20   motorist claim?
21      A    I'm not sure I understand what you're
22   saying, but I am the adjuster on the file.  Is that
23   what you're asking?
24      Q    Maybe.  Are you continuing to handle
25   Ms. Beeson's underinsured motorist claim?

1    A    Yes.  The claim is still open and I am the
2    control adjuster.
3    Q    I'm just making some notes here.
4         What was the last substantive claim note
5    that you made on Mrs. Beeson's file for the open
6    claim that you're still continuing to handle?
7    A    Probably -- the last note that I made in
8    the file?  Is that what you're asking?  Was probably
9    in June of last year.
10   Q    What was the substance of that note?
11   A    That was just my summarizing the
12   scheduling order that was provided to us, giving us
13   the outline that the case is coming up for trial
14   docket and that sort of thing.
15        MR. O'CONNOR:  Hey, Barbara.
16        THE WITNESS:  Yeah.
17        MR. O'CONNOR:  I don't want you to
18   disclose any communications you've had with counsel.
19   Okay?
20        THE WITNESS:  Oh, okay.
21        MR. O'CONNOR:  So don't discuss anything
22   that is the product of your communication with any
23   of us or anybody inhouse who's a lawyer.
24        And that's true all day long.  We're not
25   going to disclose anything we talked about or

1  anything that you recorded as a result of those
2  conversations or exchanges.
3          THE WITNESS:  Okay.
4          MR. ROWE:  I appreciate you interjecting
5  there, Bill.  I didn't want to, and it wasn't my
6  intention, to intrude on any sort of conversations
7  or communications that you have had with any of the
8  attorneys that might be representing Safeco in this
9  case or any internal counsel at Safeco, so if I
10 start to tread the line there or if that's the
11 answer to your question, you might want to take a
12 moment to discuss with Mr. O'Connor whether that's
13 an appropriate question to answer.  Okay, Ms. Meyer?
14         THE WITNESS:  All right.  Thank you.
15 BY MR. ROWE:
16    Q    And, actually, Mr. O'Connor's interjection
17 there kind of gives me some guidance on what I'm
18 really asking.  When I think of a claim like
19 Ms. Beeson's, we are currently involved in
20 litigation related to how Safeco handled her claim,
21 and sometimes, insurance companies consider that
22 claim to be ongoing and continue to investigate it,
23 and sometimes insurance companies consider that
24 claim to be in litigation and transfer it into a
25 litigation status as opposed to, say, an open,

1  "We're handling the claim" sort of status.  Does
2  that make sense to you?
3       A    Yes.
4       Q    So how would you describe the status of
5  Ms. Beeson's claim as it stands today?
6       A    As I said, the claim is still open.  I am
7  still considered to be the control adjuster, and
8  since it is now in litigation, I remain active on
9  the file, working in conjunction with our defense
10 counsel.
11      Q    Okay.  So your continued handling of the
12 claim is in conjunction with Mr. O'Connor's office?
13      A    Correct.
14           MR. O'CONNOR:  Object.  Asked and
15 answered.
16 BY MR. ROWE:
17      Q    Ms. Beeson, I should have asked you --
18 Ms. Meyer, I should have asked you this earlier.
19 Tell me a little bit about yourself.
20           MR. O'CONNOR:  Objection to form.
21           THE WITNESS:  What would you like to know?
22 BY MR. ROWE:
23      Q    How old are you?
24      A    I am 68.
25      Q    Are you married?  Do you have kids?  What

```
 1      Q    Okay.  So I'll expand it for you.
 2      A    Okay.
 3      Q    For the purposes of the record --
 4      A    Yeah.  My eyesight isn't as good as yours,
 5  apparently.
 6      Q    I've got a giant monitor above my camera,
 7  so --
 8      A    Okay.
 9      Q    This document is Safeco 139 through Safeco
10  144, and I will expand it so you can read it better.
11           Can you see that now?
12           This is a Bodily Injury Evaluation
13  Worksheet, which is kind of a standardized form that
14  you might use at Safeco for handling an underinsured
15  motorist claim; correct?
16      A    Correct.
17      Q    And because it's a Bodily Injury
18  Evaluation Worksheet, it's also the form that you
19  would use if you were determining what damages might
20  be owed by a Safeco insured to a third-party
21  claimant; correct?
22      A    Did you say -- is it the same form?
23      Q    That was my question, yes, ma'am --
24      A    For the third-party -- the first-party,
25  yes.
```